# HUGH R. HEALY

## v.

# 219,399 FEET OF DRESSED YELLOW PINE LUMBER.

---

Mayaguez, Admiralty, No. 182.

1. Whether or not a lien for freight charges has been waived by the shipowner is a question of fact, to be shown by proof as to the intention of the parties.

2. A statement that "the freight is payable on delivery" of the cargo is not evidence of a waiver of the lien.

Opinion filed March 8, 1907.

---

*Messrs. Horton & Cornwell,* for libellant.

*F. H. Dexter, Esq.,* for claimant.

RODEY, Judge, delivered the following opinion:

This is a libel in admiralty filed by Mr. Healy against

219,399 feet of dressed yellow pine lumber. The facts are that libellant is the owner of the brig "Gabriel," and the New York & Porto Rico Steamship Company, acting as his agents, entered into a contract on the 15th of May, 1906, with Chas. S. Hirsch & Company of New York, that the boat should go from New York to Jacksonville, Florida, and take on a load of lumber and bring it to Aguadilla, Porto Rico, which it did. The contract or charter party is made out on a printed blank filled in with typewriter, and sets out that the agents of the boat (for the owner, of course) are to receive $8 per thousand feet for the lumber carried, and that the freight is payable on proper delivery of the cargo at the port of discharge. The charterers are also to pay all port charges, lighterage, pilotage, consul fees, etc.

Upon the signing of the contract, a commission of 5 per cent on the cargo and demurrage accrued under its terms, half to the New York & Porto Rico Steamship Company and half to A. H. Bull & Company. It is not stated why this is so, but it is immaterial.

When the boat arrived at Aguadilla with the load of lumber, the master proceeded to deliver it to the consignees, Sanders, Philippi, & Company, of that place, but, there being no warehouse, pier, or other place to unload it on or in, it was at once carried to the warehouse of said firm, some distance from the wharf, and was measured there as it was being delivered. At the end of the measuring, a dispute arose as to its quantity or about the freight, so that the consignees refused to pay the whole sum demanded ($2,272.39) and paid only $1,982.80, leaving a balance of $289.59.

The fourth paragraph of the libel states: "That the said cargo has been fully delivered and redelivered by the con-

Healy v. 219,399 ft. Dressed Yellow Pine Lumber.

signees, Sanders, Philippi, & Company, at Aguadilla, Porto Rico." It would appear, therefore, that it is claimed the real fact in the case, which libellant expects to prove, is that, immediately upon the consignees, as agents for Hirsch & Company, failing to pay the freight in full, he promptly notified them that he held his lien on the lumber for the same; at any rate, the libel was immediately filed, and the writ issued against the lumber, a forthcoming or other proper bond representing it, being immediately given, and it is now on file. Hirsch & Company at once thereafter came in, and filed exceptions to the libel, claiming the lumber themselves as owners, on the ground that, under the contract of freightage or charter party, the owner of the boat had agreed to trust them for the freight, and not make any claim of lien in the premises; and further, that under the allegations of the libel it appeared that the lumber had been completely delivered and carried away from the wharf, and that such fact is evidence that all liens thereon had been waived.

We have examined this charter party or contract of freightage, and cannot agree with this contention of Hirsch & Company, because, as stated, the freight is payable at the port of delivery on discharge of the cargo. Therefore we feel that it does not come within the rule cited in support of this contention, as settled by the case of Raymond v. Tyson, 17 How. 53, 15 L. ed. 47. In that case, the fact that the freight was payable somewhere else than at the port of delivery induced the court to hold that the lien had been waived; but, even as to that holding, there was a very strong dissenting opinion.

As showing that the lien was not waived, we have examined the following cases: Re 600 Tons of Iron Ore, 9 Fed. 595; The Alaska, 23 Fed. 597; Costello v. 734,700 Laths, 44 Fed.

II. PORTO RICO.—26.

*Healy v. 219,399 ft. Dressed Yellow Pine Lumber.*

105; Cuff v. 95 Tons of Coal, 46 Fed. 670; and McBrier v. A Cargo of Hard Coal, 69 Fed. 469.

From all of these cases, the question of whether or not a lien is waived is, it seems, to be gathered from the proofs and the freightage contract, and is always largely a question of the intent of the parties as shown by the proofs.

In this case, libellant says he expects to prove that there was no place to put the freight on the beach at Aguadilla, to protect it from thieves or the weather, and that of necessity it had to be hauled directly to the warehouse of the consignees in order to measure it; and that he never for a moment either intended to, or in fact did, release his lien, which, under admiralty practice, it is conceded he is entitled to for his freight charges.

The exceptions will therefore be overruled and the parties will go to trial on the issue joined by the replication, which is already on file, and it is so ordered.